UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CYNTHIA JAMES, AS ADMINISTRATOR
OF THE ESTATE OF DEM REYNOLDS

CIVIL ACTION: 18-144

VS.

UNITED STATES OF AMERICA                    JANUARY 25, 2018

## COMPLAINT

1. This action sounds in medical malpractice against the defendant United States of America and is brought to the authority of 28 U.S.C. Section 1346(b) et seq. (the "Federal Tort Claims Act" or "FTCA").
2. Notice of a federal tort claim was provided by due process to the defendant.
3. The plaintiff was appointed by the Probate Court to act as the administrator for the estate of her son and to specifically bring this action.
4. Since the date of the filing of the administrative claim, the defendant has yet to issue a final denial or acceptance of the claim.
5. Having exhausted the administrative tort claim filing requirement of the FTCA, the plaintiff is now authorized by the FTCA to bring this civil action.
6. STAYWELL HEALTHCARE, INC. ("STAYWELL") is a Connecticut corporation that runs a healthcare clinic in Waterbury CT that is federally funded.
7. STEPHEN ROSSNER M.D. ("ROSSNER") is a Connecticut licensed physician, board certified in internal medicine, who is employed by and/or an agent of STAYWELL.
8. At all times herein, STAYWELL and ROSSNER provided internal medicine services to patients like the plaintiff's decedent.
9. On or about June 6, 2012, the plaintiff's decedent DEM REYNOLDS, then 22 years of age, came under the medical care of STAYWELL and ROSSNER who acted as his primary care physicians from then until his death on October 26, 2014.
10. On or about June 6, 2012, the defendants performed an "Adult-New Physical" on DEM REYNOLDS.
11. This physical demonstrated that the decedent had a normal physical exam. His blood pressure was 115/87. Lab work including a lipid panel was ordered.
12. The next visit on July 20, 2012 at STAYWELL was with an agent servant or employee of Staywell, Adan Sadiq, MD, a board certified doctor in internal medicine.

13. Dr. Sadiq, at this visit, found that the decedent's blood pressure was now 136/84 and that the decedent now weight 282 pounds with a height of 5'9".
14. The next visit at the defendant's facility was on December 27, 2012 with defendant ROSSNER who asked for the decedent to come in to discuss the result of lab work done on December 18, 2012
15. This lab work done at Quest Labs demonstrated that Dem Reynolds had abnormally high triglycerides and CHOL/HDLC Ratio.
16. At this 3rd visit, the defendant ROSSNER found that the decedent now had a blood pressure of 148/84. He counseled the decedent to eat a low cholesterol diet but did not prescribe any medications.
17. The 4th visit to STAYWELL occurred on May 27, 2014 for a regularly scheduled physical with defendant ROSSNER.
18. At this physical, the decedent communicated to ROSSNER that he was regularly suffering headaches, and that his right leg and right arm/hand were feeling tight.
19. The decedent now weighed 299 pounds and his blood pressure was at 147/90.
20. The defendant ROSSNER ordered a CBC and asked that the decedent come back in a year. He also advised the decedent to engage in regular exercise.
21. On August 6, 2014, the decedent visited STAYWELL for the 5th visit and was seen by Staywell's agent or employee Doreen Torres who listed the defendant ROSSNER as the decedent's provider.
22. At this 5th visit, Torres found that the decedent's blood pressure was now 150/102. Blood work was ordered which was sent to ROSSNER and STAYWELL.
23. The blood work done on the decedent on August 6, 2014 was never communicated to the decedent.
24. This blood test showed a dramatic increase in triglycerides (372 mg/L)(double the first lab report); a dramatic decrease in HDL-good cholesterol_of 80% and a significant imbalance of non-HDL cholesterol to LDL cholesterol.
25. On October 26, 2014, Dem Reynolds died of hypertensive cardiovascular disease which is more particularly described by the autopsy done by the Office of the Chief Medical Examiner.
26. The death of the plaintiff's decedent was directly and proximately caused by STAYWELL through its agents, servants and employees including ROSSNER and others who deviated from the standard of care applicable to such personnel and facilities in one or more of the following ways in that
    a. they failed to alert the plaintiff's decedent, notify the plaintiff's decedent and follow up with the plaintiff's decedent on the significant abnormal findings shown in the August 6, 2014 when they had a duty to do so and a continuing duty to do so through his death;
    b. they failed to refer the plaintiff to appropriate specialists including cardiologists for further testing and the prescribing of drug therapy;
    c. they failed to prescribe cholesterol lowering medications after the lab work done on three occasions; and/or
    d. they failed to prescribe an effective treatment regimen including drug therapy when teh decedent showed clear deterioration of his cardiovascular system through blood pressure readings and/or lab work.

27. As a proximate result of the defendants' deviation from this standard of care, Dem Reynolds suffered severe oxygen deprivation, lost his opportunity to be rescued/healed/made healthy, experienced great pain and distress, and died.
28. As an additional result, the Estate was caused to incur great medical expense.
29. As a still further result, Dem Reynolds was caused to lose all of his earning capacity and a complete destruction of his ability to carry on and enjoy all of life's activities-all to the Estate's loss.
30. Cynthia James was appointed by the Probate Court of Waterbury to be the administrator of this estate and prosecute this action with diligence given the extreme negligence of the defendant and get losses suffered.

Wherefore the plaintiff requests compensatory damages in excess of $24,000,000, as well as attorney's fees and costs.

          The Plaintiff

          By: /s/Michael A. Stratton
          ct08166
          Michael Stratton, Esq,
          33 King Street
          Stratford, CT 06615
          203.266.1300
          mike@strattontrials.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CYNTHIA JAMES, AS ADMINISTRATRIX
OF THE ESTATE OF DEM REYNOLDS

CIVIL ACTION:

VS.

UNITED STATES OF AMERICA                    JANUARY 25, 2018

## CERTIFICATE OF GOOD FAITH

    Undersigned certifies that he has conducted a full investigation into the facts, standards and circumstances of the medical care provided to the plaintiff as described above. After completing this inquiry, undersigned attests that there is a good faith basis for all of the claims made herein regarding the medical malpractice committed. In conformity with C.G.S. Section 52-190a et seq. undersigned provides this certificate as well as the attached Exhibit A which is a report from a similar health care provider attesting to the deviations from the standard of care provided by the psychiatrists employed by the VA Hospital in West Haven and Silver Springs to the plaintiff.

                                                                      /s/Michael A. Stratton ct08166

EXHIBIT A

OCTOBER 1, 2016

ATTORNEY MICHAEL STRATTON
33 KING STREET
STRATFORD, CT 06615

BY EMAIL: MIKE@STRATTONTRIAL.COM

RE: DeMo'ir Reynolds Record Review and Opinion

Dear Mike,
I finally had a chance to review the records regarding the unfortunate death of your client's son Demo'ir Reynolds. The progression of cardiovascular symptoms is so apparent with each visit to the Staywell clinic that it shocks me that nothing was done to either refer this very young man to a cardiac specialist or to put him on various very effective cardiac medications. These medications have been found particularly effective in stopping the progression of heart disease. As I will explain in more detail, DeMo'ir's death was absolutely preventable, and any interpretation of the standard of care applicable to internal medicine was breached in this case by Staywell and his main treating doctor Stephen Rossner, M.D.

My CV is attached. I have been board certified in internal medicine for 25 years, I am a licensed physician in the state of REDACTED and act as a primary care doctor for more than 900 patients in a private practice here in REDACTED
I have hospital privileges at three local hospitals and teach residents on a part time basis. I am very familiar with the standard of care applicable to clinics like Staywell Health Care in Waterbury as i have a very similar practice, and handle the same type of population as Dr. Rossner.

On June 6, 2012, the patient, 22, began treating at Staywell Health Care and Dr. Rossner, a board certified internal medicine physician. According to the Staywell records, Rossner acted as his primary physician from then until his death on October 26, 2014. Rossner should have received all of DeMo'ir's lab work and any the records of any exam done by other personnel such as Dr. Sadiq and any APRN.

This initial physical demonstrated that the decedent had a normal physical exam. His blood pressure was 115/87. Lab work including a lipid panel was ordered. I do not however see the results of this initial lab work or any mention of his exact weight which is very germane to this patient's treatment or should have been. He was quite heavy. The exam was essentially normal but creates a baseline that should have been referenced as the patient's condition deteriorated.

The next visit on July 20, 2012 was with Adan Sadiq, M.D. Dr. Rossner is listed as the main provider. Dr. Sadiq upon examination discovered that the patient's blood pressure was now 136/84 and that the decedent now weight 282 pounds with a height of 5'9". The blood pressure readings were substantially higher and should have raised a concern-although at this point the standard of care would not require a referral or drug treatment.

The next visit to Staywell Health Care was in December 2012 with Dr. Rossner. The blood pressure is now noted to be 148/84. Dr. Rossner counseled the decedent to eat a low cholesterol diet but did not prescribe any medications. In my view it was a deviation from the standard of care not to refer the patient to a cardiologist at this point or at a minimum closely monitor the patient and prescribe appropriate drug therapy. Instead Dr. Rossner asks the patient to do more regular exercise and diet and come back in a year. This treatment regimen is much too mild for someone so young with blood pressures rising so significantly over just 7-8 months.
Lab results taken at that time on December 18, 2012 are also very concerning. The LDL level is 181, the HDL is only 32 and the ratio is 5.8 more than 15% beyond the highest normal range. It is unclear if Dr. Rossner conveyed these results to the patient.

The next visit is not until May 27, 2014 with Dr. Rossner. The patient's chief complaints are intermittent headaches, and right leg and hand tightness. These are classic signs of hypertension yet seemingly go unnoticed or dismissed as orthopedic in nature. The patients blood pressure is now higher on the diastolic range 147/90, The treatment recommendations are wholly inadequate at this point: exercise and come back in a year. Labs are ordered but not in the record. The labs that are completed appear in August. These labs show remarkably abnormal LDl-390—more than twice the level than the standard recommended for drug therapy.

And the HDL levels have fallen into the very low abnormal level. Again there is no referral to a cardiologist, no close monitoring, and no prescribing of absolutely required and life saving drug therapy.

The final visit at Staywell is in August 2014 with an APRN who presumptively works with Dr. Rossner and once again we see rising blood pressures now over 150 systolic and over 100 diastolic. Again none of the requires action is taken.

I can say without hesitation that teh care provided this patient as described falls well below the standard of care for a clinic such as Staycare, their physicians, and their other staff. Dr. Rossner took none of the action absolutely required of a physician board certified in internal medicine. The failure to monitor blood pressures, to refer the patient to a cardiologist and to start drug therapy are substantial deviations from the standard of care and within a reasonable degree of medical certainty i can say that these failures led to the post untimely death of this very young man. This is a

very unfortunate case of a healthcare clinic that withheld lifesaving care that was available to it, but never used to help your client DeMo'ir Reynolds.
I hope that this report is of value to you and his family in bringing a claim.

REDACTED